(No. 13644.—Judgment affirmed.)

EDITH DAVIDSON, Appellant, *vs.* BESSIE DINGELDINE, Appellee.

*Opinion filed December 21, 1920.*

1. CONTRACTS—*what does not work a forfeiture of contract for the purchase of land.* After an injunction has been granted in a divorce suit restraining the husband from directly or indirectly disposing of premises held by him under a sealed contract of purchase on which no installments are overdue, the husband cannot, by agreement with the vendor, who is also his attorney in the divorce suit, effect a forfeiture of the contract by requesting the vendor to cancel the credit for the last paid installment and apply the amount on his fee.

2. SAME—*when wife acquires interest of husband in executory contract.* Under the rule that executory contracts for the sale of land are assignable, a wife may by the provisions of a divorce decree obtain the interest of her husband in an executory contract for the purchase of the premises they occupy.

3. LIS PENDENS—*purchaser of property in litigation takes subject to the judgment or decree.* One who acquires from a party to a proceeding an interest in real estate which is then in litigation in a court having jurisdiction of the subject matter and of the person of the party from whom the interest is acquired, takes subject to the judgment or decree on the principle of public policy.

4. SAME—*doctrine of lis pendens stated.* Lis pendens is notice of all facts apparent on the face of the pleadings and of those other facts of which the facts so stated necessarily put the purchaser on inquiry.

5. SAME—*when lis pendens applies to divorce proceeding—injunction.* Where property held under a contract for its purchase is specifically referred to in a bill for divorce by the holder's wife and an injunction is granted restraining the defendant from interfering with it, any party taking the property *pendente lite* takes it subject to the equities of the parties to the litigation, even though the grantor, who held the legal title, was not a party to the suit.

6. EJECTMENT—*plaintiff must recover on strength of his title.* The plaintiff in ejectment must recover on the strength of his title and not on the weakness of the defendant's title.

7. SAME—*what is proof of rightful possession in the defendant.* The defendant in an ejectment suit, who is the wife of the tenant who took possession under a contract for the purchase of the property, is in rightful possession where the proof shows that she entered with her husband, that they paid the taxes, and that after a divorce proceeding in which she secured an injunction against any disposition of the property by her husband she tendered the entire amount due under the contract and the tender was refused.

8. SAME—*ejectment cannot be maintained without notice when the defendant is in rightful possession.* Where the defendant is in rightful possession of property at the time ejectment is brought, the plaintiff cannot maintain the action unless he has given notice to the defendant demanding possession.

9. SAME—*possession under contract for purchase is not a mere license.* A license is a personal and unassignable privilege conferred either by writing or parol and can be revoked at will, but the rights obtained under a contract for the purchase of real estate constitute a real interest in the property itself, and one who takes possession under such a contract does not hold by a mere parol license to occupy the premises.

APPEAL from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding.

BURTON & HAMILTON, for appellant.

KIRK & SHURTLEFF, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant brought an action of ejectment in the circuit court of Peoria county alleging that she owned lots 31 and 32 in block 1 of Reservoir Heights, in said county, and that appellee wrongfully withheld the same. On the trial a peremptory instruction was given to find the issues for appellee. Motion for a new trial was overruled and judgment entered, and the cause has been brought here on appeal.

The evidence in the record shows that Henry Dingeldine, as purchaser, signed an agreement for a warranty deed

October 13, 1913, with Arthur Keithley as owner, for the purchase of the above described property, the agreement being recorded in the recorder's office of Peoria county. Under its provisions Dingeldine was to pay $800 as consideration for the lots and a small cottage thereon, payable $50 down and $10 each month. The payments were made up to and including the $10 due June 10, 1918, which, with the $50 first payment, amounted in four years and eight months to $610. The vendee had also paid the taxes and kept the insurance in force, as provided by the articles of agreement. He and his wife went into possession of the premises at or about the time of signing the agreement and both remained in possession until May 24, 1918, when appellee, Bessie Dingeldine, filed a bill for divorce against her husband, Henry, and on the same day procured from the circuit court a mandatory injunction restraining him from directly or indirectly disposing of or attempting to dispose of the property described in the articles of agreement. On June 24, 1918, Dingeldine went to the office of Keithley, the vendor, and on a written statement prepared by Keithley signed the following: "Arthur Keithley please erase the within amount as a credit on contract and apply same on fees I owe you in my divorce case.—6-24-18." Keithley was a lawyer and was at that time attorney for Dingeldine in the divorce proceedings, and the amount referred to in this statement was the $10 which Dingeldine had paid to Keithley under the articles of agreement on June 10, 1918, to apply on the purchase price. At the time Keithley was so credited with this $10 the divorce suit was pending and the injunction was in full force. Later the injunction order was merged in the final decree of divorce, which awarded to appellee all the interest of her husband in the lots and property described in the articles of agreement, the decree specifically describing such property. Thereafter, on June 27, 1919, appellee and her counsel went to Keithley's office and tendered him payment of what was then

295–24

due under the articles of agreement, but according to Mrs. Dingeldine's testimony Keithley refused to receive it, stating that he was Dingeldine's lawyer, and told them to get out,—that he wanted the property and did not want the money. It appears, also, that after the divorce decree was entered appellee offered to pay an installment then due under the agreement and that Keithley refused to receive such payment. The evidence also shows that pending the divorce proceedings there was a serious dispute between appellee and her husband as to whether he was obeying the orders entered by the court in said proceedings, and on motion of appellee her husband had been sent to jail for not obeying such orders and had gotten out through the efforts of Keithley, his attorney. Some time after the divorce decree was entered, Keithley in his own name instituted forcible entry and detainer proceedings in a justice court in Peoria county against appellee to dispossess her of the premises described in the articles of agreement. As we understand, he was defeated in that proceeding and appealed, but for some reason the appeal was not perfected. Later, October 24, 1919, he made a quit-claim deed to his half-sister, Edith Davidson, of the property described in the articles of agreement. He did not deliver the deed or file it for record until just previous to bringing this ejectment suit to the November term, 1919, as attorney for Edith Davidson. On the hearing of this case in the circuit court Keithley testified that his only interest in the suit was that of a witness but admitted that he had paid all the costs of the suit, and stated that he had not sent for her to come into court during the trial of the case and did not think she would be needed there.

Keithley attempted by the withdrawal of the $10 paid him by Henry Dingeldine on June 10, 1918, to put himself into a position to consider the payments theretofore made under the articles of agreement forfeited and the vendee's rights at an end. On the evidence shown on this record,

without question the injunction entered by the circuit court in the divorce proceedings was in force as against Dingeldine at the time he made the last payment under the articles of agreement in June, 1918, and continued in force against him, and his attempt to agree with his lawyer that the $10 paid on the contract should apply on attorney's fees was contrary to the injunction. Beyond doubt Keithley knew of this order, as he was Dingeldine's attorney in the divorce proceedings, and the attempt to forfeit and bring to an end the articles of agreement must be held a subterfuge to obviate carrying out the provisions of the divorce decree, and the attempt by Keithley to quit-claim his interest to his half-sister appears to have been a part of the same plan. We do not think that the contract, which was under seal, could be modified or varied by a parol agreement between the parties at the time the attempt was made to apply the $10 on the contract of purchase to the fees of Keithley. *Loach* v. *Farnum,* 90 Ill. 368; *Dougherty* v. *Catlett,* 129 id. 431.

Whether, on the facts as found in the record, Edith Davidson, the appellant, gained such a legal title as permitted her to assert that the premises have been improperly withheld from her and that she is entitled to their possession is the chief question to be determined here. She must recover on the strength of her title and not on the weakness of the defendant's title. So far as this record shows, she did not have actual notice of the condition of the title to the lots as affected by the divorce decree or of the alleged forfeiture of the agreement for deed, aside from what she was charged with because it was shown on the records. An examination of an abstract of title brought down to date would have disclosed the interest of appellee in the injunction suit against her husband and the order forbidding interference with the property in question and the final decree awarding the property to appellee. The general rule is that one not a party to a suit is not affected

by the judgment, but there is an exception that one who acquires from a party to the proceeding an interest in real estate which is at that time involved in litigation in a court having jurisdiction of the subject matter and of the person of the one from whom the interests are acquired, takes subject to the judgment or decree. (*Steger* v. *Traveling Men's Building Ass'n,* 208 Ill. 236.) According to the generally accepted view, *lis pendens* is notice of all facts apparent on the face of the pleadings and of those other facts of which the facts so stated necessarily put the purchaser on inquiry. (17 R. C. L. 1014.) Many authorities lay down the rule that the doctrine of *lis pendens* as to the effect on the title of an alienee is not founded on any principles of courts of equity with regard to notice but on the ground that it is necessary to the administration of justice,—that is, on the principle of public policy; (17 R. C. L. 1012;) and this is the doctrine laid down by this court in *Norris* v. *Ile,* 152 Ill. 190, it being also there held that a pending suit involving the property gives constructive notice for all purposes.

In applying the doctrine of *lis pendens* to divorce proceedings it has been said that "where the plaintiff seeks to have adjudicated and enforced his or her equitable interest in real estate standing in the defendant's name the proceeding is *pro tanto* to enforce such right, and in so far as his or her alleged right is enforced by the judgment or decree the doctrine of *lis pendens* applies." (9 R. C. L. 248.) This court has held that a part of the husband's realty might be assigned as alimony in divorce proceedings; (*Bergen* v. *Bergen,* 22 Ill. 187;) and we have also held that where property was specifically referred to in a bill for divorce and an injunction was granted restraining the defendant from interfering with it, this was sufficient notice to the world that they took any rights in the property subject to the equities of the parties to the litigation. (*Vanzant* v. *Vanzant,* 23 Ill. 485.) Under these authorities there

is no merit in the argument of counsel for appellant that as neither she nor the grantor from whom she received the property was a party to the litigation she was not bound by the decree in the divorce proceedings.

Executory contracts for the sale of land are assignable under the modern practice in courts of law, and the interest thus acquired is protected and made available in a court of law. (5 Corpus Juris, 852, and cases cited; see, also, *Moore* v. *Gariglietti*, 228 Ill. 143.) It seems clear under these authorities that any rights that appellee's husband had under the articles of agreement were properly transferred in the divorce proceedings to the wife, and that she took his interest under the contract, with all the rights he had.

It is contended by appellant that the articles of agreement did not specifically convey authority to Henry Dingeldine or his wife to take possession of the property. While it may be conceded that the contract did not grant such authority in specific terms, a fair construction of the contract found in the record indicates, in our judgment, that it was understood that the purchaser was to take possession of the property under the contract, for it states in terms that in case of the failure of the party of the second part,—that is, Henry Dingeldine,—to make any of the payments or perform any of the covenants therein contained, the contract shall, at the option of Keithley, be forfeited and determined and the party of the first part "shall have the right to re-enter and take possession of the premises aforesaid." The proof of the contract, the taking of possession under it, the payment of taxes, the divorce proceedings, the injunction, the decree of divorce, the tender made after the divorce proceedings of the entire amount due under the contract, the refusal of the tender,—all these, taken together, show, in our judgment, that at the time the ejectment suit was instituted appellee was in lawful and rightful possession of the lots. (*Sloan* v. *Petrie*, 16 Ill. 262; *Stow* v. *Russell*, 36 id. 18.) There can be no question on this

record that Dingeldine did take possession of the premises at the time of executing the contract or immediately thereafter. The evidence in the record shows that appellee was in rightful possession of the property at the time these proceedings were instituted, and therefore such proceedings could not be maintained against her. *Sands* v. *Wacaser,* 149 Ill. 530; *Daniels* v. *Smith,* 252 id. 222.

Counsel for appellant concede that appellee was in possession but claim that all possession of herself and husband was simply under license, and therefore could be withdrawn by the party who granted the license, without the consent of the licensee. It is true that a license is a personal and unassignable privilege conferred either by writing or parol, and therefore can be revoked at will. (17 R. C. L. 564.) It is clear, however, that the rights obtained under this contract constituted a real interest in the real estate itself and not a mere parol license to occupy the premises, and such rights could not be forfeited by Keithley as he attempted to do according to this record. It is conceded that no notice or demand to deliver up possession was made by appellant or any authorized agent upon appellee before the institution of these proceedings. A person who enters upon and rightfully holds possession of premises under a contract for the purchase of real estate cannot be treated as a trespasser. (*Prentice* v. *Wilson,* 14 Ill. 91.) Appellant was therefore required, before instituting ejectment proceedings, to give notice to appellee demanding possession. *Prentice* v. *Wilson, supra; Smith* v. *Price,* 42 Ill. 399.

We find no reversible error in the record, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*